UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBBIE L. WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:07CV00036 ERW |
| | ) | |
| FARMERS ALLIANCE MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Farmers Alliance Mutual Insurance Company's Motion to Dismiss Count III of Plaintiff's Complaint [doc. #32], Defendant Farmers Alliance Mutual Insurance Company's Motion for Summary Judgment [doc. #41] and Plaintiff's Motion for Partial Summary Judgment [doc. #44]. The Court will address the Motion to Dismiss first, and will then consider the two pending Motions for Summary Judgment.

**I.    MOTION TO DISMISS**

In the Motion to Dismiss, Farmers Alliance Mutual Insurance Company ("Defendant") asks that the Court dismiss Count III of Debbie Wells' ("Plaintiff") Complaint. Count III asserts a claim of fraudulent misrepresentation against Defendant.

***A.    LEGAL STANDARD***

Defendant asserts that Plaintiff has failed to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to Plaintiff. *Chambers v. St. Louis County*, 247 F.App'x 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44

F.3d 667, 671 (8th Cir. 1995)). While a plaintiff does not have to "set out *in detail* the facts upon which he basis his claim," Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) (emphasis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The factual allegations contained in the pleadings must "raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S. Ct. at 1959. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (internal citations and quotations omitted). Therefore, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

## B. DISCUSSION

Defendant asserts that tort claims, such as this claim for fraudulent misrepresentation, are barred under Missouri law, because remedies arising from an insurance claim are limited to the contract amount plus statutory penalties and attorney's fees. Defendant is correct, because "the wrongful delay or refusal to pay a first-party insurance claim is simply a breach of contract. Recovery may be enhanced under the vexatious refusal statute, if applicable, but no tort claim supplants or supplements the basis contract claim and remedy." *Taylor v. Fire Ins. Exchange*, 2009 WL 294803, at *2 (Mo. Ct. App. Feb. 9, 2009) (citing *Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 67-68 (Mo. banc 2000)).

Plaintiff asserts that an exception to this rule exists where the tort claim is not dependent upon the elements of the breach of contract claim. This is correct, however, the Court's review of Plaintiff's Complaint demonstrates that her fraudulent misrepresentation claim is based upon

her breach of contract claim. Plaintiff's fraudulent misrepresentation claim begins by specifically stating that it incorporates the allegations from the other claims in the Complaint. The claim then goes on to detail the four representations at issue; (1) that Defendant stated it would timely pay for her loss, (2) that Defendant stated it would pay Plaintiff's additional living expenses, (3) that Defendant would pay for the removal of debris, and (4) that Defendant would pay for any additional losses Plaintiff suffered as a result of the damage.

These representations are all "based on [Defendant's] refusal to pay and are not based on conduct distinct from conduct that merely constitutes a breach of contract." *Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 290 (Mo. Ct. App. 2008). Plaintiffs may not substitute a tort claim where a contractual remedy is available. *Id.* Plaintiff's claim for fraudulent misrepresentation must be dismissed because the basis for this claim is not an independent tort.

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.   *BACKGROUND FACTS*[1]

On or about November 8, 2006, Defendant issued a County Home Policy, policy number CHM 1331159 ("Policy") to Plaintiff, with a policy period of November 8, 2006 through November 8, 2007. The Policy was to insure against certain risks that may occur at Plaintiff's principal residence located at 10 Caulfield Lane, Montgomery City, MO ("Property").

It is undisputed that there was a very severe ice and snow storm on or about November 30, 2006 that caused damage to structures and personal property located on the Property.

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts [doc. #42], Plaintiff's Response [doc. #47-2], Plaintiff's Statement of Genuine Issues of Material Fact [doc. #42-15], Plaintiff's Statement of Uncontroverted Material Facts [doc. #45-2] and Defendant's Responses to Plaintiff's Statement of Facts [doc. #49].

Plaintiff's view of the evidence is that there was an accumulation of four inches of ice and over fourteen inches of snow on her pool enclosure structure and on the roof of the three-car garage building. Plaintiff asserts that tree limbs fell on her garage and broke through the roof, allowing water to enter the garage and cause damage to her personal property. Additionally, Plaintiff claims that the snow and ice accumulation on the roof of the pool enclosure building caused the roof to fail, causing ice, snow, and roof debris to fall into the interior portion of pool, decking, pool liner and other property. Taking Plaintiff's allegations of fact as true, the damage to her Property was very substantial. There is a serious dispute raising genuine issues of material fact about the timing, thoroughness and reliability of the investigation that was conducted by Defendant's agents. Additionally, there exist genuine issues of material fact concerning Plaintiff's cooperation, or lack thereof, under the terms of the policy at issue.

After inspecting the Property, Defendant advanced Plaintiff two checks totaling $6,648.86 for Plaintiff's claim of damages. The first check was dated March 19, 2007, and it stated that it was for "storm damage to garage." The second check was dated May 9, 2007, and the letter that accompanied the check stated, "[e]nclosed is a check in the amount of $2,198.78 as full payment for damages to the pool enclosure. This is based on our estimate in conjunction with the engineering report; copies of which you have been provided."

Plaintiff made temporary repairs to protect the property at a cost of $2,000.00 which Defendant does not deny as being reasonable. After temporary repairs were made to the property, Defendant's engineer assessed the damage to the Property. His determination was that some of the damage to the pool enclosure was not from the storm. This is in direct conflict with Plaintiff's expert. Plaintiff received an estimate for repairs at $35,407.82, an amount quite substantially higher than the amount tendered to Plaintiff for damages to her property.

4

Plaintiff claims that Defendant told her not to remove damaged property because Defendant wanted to salvage the property for sale, but never told Plaintiff which property it wanted to salvage, and never returned to claim the property. On May 16, 2007, Plaintiff sent a listing of personal property she claimed was damaged or destroyed, with values for each item. These items totaled $34,921.40. On June 7, 2007, Defendant sent independent claims adjusters to the Property to inspect the damaged personal property items. Plaintiff communicated with these adjusters after the inspection, sending them pictures of specific personal property items, and requesting information about the status of her claim.

On August 2, 2007, Defendant sent a letter to Plaintiff, scheduling her for an examination under oath on August 31, 2007, and requesting that she produce documents and records at that examination. It is disputed whether Plaintiff received this letter before or after the pending action was filed, however, Plaintiff filed this lawsuit on August 3, 2007. Plaintiff did not appear to testify at the examination under oath on August 31, 2007, and she did not provide Defendant with the documents and records Defendant requested she produce.

The Policy details requirements that policy-holders must satisfy after loss events. For example, they must provide Defendant with any requested "records and documents" and must also submit "to examination under oath, while not in the presence of any other 'insured,' and sign the same." Additionally, the Policy declares that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within ten years after the date covering the loss."

## B.     *LEGAL STANDARD*

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the Court shows "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).

"By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its

pleadings, but by affidavit and other evidence must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## C.    *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Defendant asserts that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff violated the cooperation clause of the insurance policy and because Plaintiff made a material misrepresentation in procuring the insurance contract. Additionally, Defendant separately asks for summary judgment on Plaintiff's claim for vexatious refusal to pay. The Court will address each issue separately.

### *1.    Cooperation Clause*

Defendant alleges that Plaintiff violated the cooperation clause of the Policy. This section of the Policy details requirements that policy-holders must satisfy after loss events. One of the requirements in this section is that Plaintiff,

> f.  As often as we reasonably require;
>     (1)   Show the damaged Property;

7

>    (2)   Provide us with records and documents we request and permit us to make copies; and
>    (3)   Submit to examination under oath, while not in the presence of any other "insured," and sign the same.

Defendant sent Plaintiff a letter on August 2, 2007, scheduling her for an examination under oath on August 31, 2007, and requesting that she produce documents and records at that examination. Plaintiff filed this lawsuit on August 3, 2007 and did not appear to testify at the examination under oath on August 31, 2007, and she did not provide Defendant with the documents and records Defendant requested she produce. Plaintiff subsequently provided this information to Defendant through her deposition and discovery requests in the course of this litigation.

It is clear, under Missouri case authority, that the cooperation clauses such as the one in question are valid and enforceable in Missouri. *See Indian Harbor Ins. Co. v. Clarinet, LLC*, 2009 WL 398492, at *12 (E.D. Mo. Feb. 17, 2009) (citing *Wiles v. Capital Indemnity Corp.*, 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001)).[2] However, in certain instances, Missouri law states that plaintiffs should be permitted "to explain why she had refused to answer before [and let] the jury pass on the sufficiency of her excuse." *Farm Bureau Town and Country Ins. Co. of Missouri v. Crain*, 731 S.W.2d 866, 871 (Mo. Ct. App. 1987) (quoting *Merchants Ins. Co. v. Lilgeomont*, 84 F.2d 685, 688 (5th Cir. 1936)).

Plaintiff cooperated with Defendant through the summer of 2007, and she states that she believed that the investigation had been concluded because the final check Defendant sent her noted "full payment." A jury could reasonably believe that Plaintiff had lawfully exhausted her responsibility to Defendant under the cooperation clause when she filed suit. While Defendant

---

[2] The specific clause in *Wiles* provides, "[w]e may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required ." *Wiles,* 215 F.Supp.2d at 1031.

claims that she failed to cooperate because she did not appear for an oral examination or produce documents on August 31, 2007, Defendant eventually received this information through the course of discovery in this action. The Court believes that it is appropriate to permit a jury to determine if Plaintiff satisfied the requirements of the cooperation clause. Plaintiff's behavior may be sufficient non-cooperation to justify the denial of her claims, however, that is a question for the jury.

## 2. *Material Misrepresentation in Procuring the Insurance Contract*

Defendant asserts that Plaintiff made a material misrepresentation when she procured the insurance contract because she stated that only one family resided on the property, when there actually were two families occupying the property.

Plaintiff responds that this Motion is the first time Defendants raised this argument, and states that she is prejudiced. However, the Court has reviewed Defendant's Answer, and in its Answer, Defendant lists specific provisions from the insurance contract. One of these provisions states that:

> . . . we provide no coverage for loss under Section I - Property Coverages if, whether before or after a loss, one or more "insureds" have:
> (1) Intentionally concealed or misrepresented any material fact or circumstance;
> (2) Engaged in fraudulent conduct; or
> (3) Made false statements;
> relating to this insurance.

As a result, Plaintiff was on notice of this defense, and Plaintiff cannot now claim prejudice.

"Misrepresentation is an affirmative defense and an insurer bears the burden of proof." *Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767, 774 (Mo. Ct. App. 2004) (citing *Cont'l Cas. Co. v. Maxwell*, 799 S.W.2d 882, 888 (Mo. Ct. App. 1990)). The insurance company must:

> demonstrate that a representation is both false and material in order to avoid the policy when (1) the representation is warranted to be true[;] (2) the policy is conditioned upon its truth[;] (3) the policy provides that its falsity will avoid the policy[;] or (4) the application is incorporated into an attached to the policy. Otherwise, the insurance company must demonstrate that the representation in the application was false and fraudulently made in order to avoid the policy.

*Id.*

The Court has reviewed the deposition transcripts and finds that there is a genuine issue of material fact regarding whether Plaintiff made a misrepresentation. Plaintiff testified that she did not know when Mr. Caulfield began renting the downstairs apartment. She was unsure if it had been three years or five years. Plaintiff's deposition was taken on September 23, 2008, and she signed the application on November 5, 2004, almost four years earlier. As a result, there is a genuine issue of material fact regarding whether Mr. Caulfield was a tenant at the time she signed the application, and the Court is unable to determine whether Plaintiff made a misrepresentation on this form. As a result, summary judgment is not appropriate.

### 3. *Vexatious Refusal to Pay*

In Count II of her Complaint, Plaintiff seeks to recover for vexatious refusal to pay. "To prove a claim of vexatious refusal, the insured must show that the insurer's refusal to pay the claim was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 76 (Mo. Ct. App. 1995) (citing *Oliver v. Cameron Mut. Ins. Co.*, 866 S.W.2d 865, 870 (Mo. Ct. App. 1993)). Defendant asserts that this claim should be dismissed because insurers can be liable for vexatious refusal to pay "[o]nly when the insurance company persists in its refusal to pay after becoming aware that it has no meritorious defense does the insurer become liable for vexatious delay." *Morris*, 895 S.W.2d at 76 (citing *Kay v. Metropolitan Life Ins. Co.*, 548 S.W.2d 629, 632 (Mo. Ct. App. 1977)).

The Court begins by noting that there is a genuine issue of material fact over whether Defendant actually refused to pay. Assuming for the purposes of this Motion that Defendant refused to pay, Defendant states that it has a meritorious defense, and as a result, cannot be liable and summary judgment must be granted. The meritorious defense Defendant relies upon is Plaintiff's refusal to submit to the oral examination and Plaintiff's alleged misrepresentation in her insurance application. While both of these issues may provide Defendant with a meritorious defense, Defendant was not aware of either of these defenses at the time Plaintiff filed this action and sought relief for Defendant's vexatious refusal to pay. The case law demonstrates that the Court must look at the facts at the time of the refusal, or in this case, at the time when the lawsuit was filed. *State ex rel. Webb v. Hartford Cas. Ins.*, 956 S.W.2d 272 (Mo. Ct. App. 1997); *Boatmen's First Nat. v. Hawkeye Security*, 861 S.W.2d 600 (Mo. Ct. App. 1993). Defendant has not asserted that it had any meritorious defenses at that point, and accordingly, summary judgment is not appropriate.

### D. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

In this Motion, Plaintiff asks that the Court dismiss several of Defendant's affirmative defenses, Defendant's counterclaim for declaratory judgment and Defendant's claim for attorney's fees. The Court will address these issues separately.

#### 1. *Affirmative Defenses*

Plaintiff asks that the Court dismiss Defendant's affirmative defenses C, D, E, F, and G. Specifically, these defenses assert; (C) that Plaintiff cannot recover due to the terms and conditions of the Policy relating to fraud, (D) that Plaintiff cannot recover because she failed to follow the terms of the cooperation clause of the Policy, (E) that Plaintiff cannot recover because she materially breached the terms and conditions of the Policy and (F) that Plaintiff failed to

mitigate her damages. In its answer, Defendant states as affirmative defense (G) that it "reserves the right to raise any additional defenses during the course of litigation." Plaintiff also asks for summary judgment on this reservation.

As the Court stated above, there is a genuine issue of material fact regarding whether Plaintiff followed the terms of the Policy, including the cooperation clause. As a result, summary judgment is not appropriate for affirmative defenses (D) and (E). Additionally, Defendant has alleged facts relating to Plaintiff's failure to mitigate damage, for example, failing to clean rust off of a saw, and summary judgment is not appropriate on affirmative defenses (C) and (F). While summary judgment is not appropriate on those affirmative defenses, the Court will grant summary judgment on (G). (G) is not actually an affirmative defense, but instead is an attempt by Defendant to reserve affirmative defenses for a future date. *See Reis Robotics U.S.A., Inc. v. Concept Indus., Inc.*, 462 F.Supp.2d 897, 907 (N.D. Ill. 2006). However, defendants seeking to add affirmative defenses must comply with the procedure established under Fed. R. Civ. P. 15, and cannot avoid those requirements by a reservation statement such as this. *See U.S. v. Global Mortg. Funding, Inc.*, 2008 WL 5264986, at *5 (C.D. Cal. May 15, 2008). (G) "is a legal nullity," having no force or effect, and the Court will strike this defense from the Answer. *Id.* (citing *Messick v. Patrol Thomas Solvent Co.*, 714 F.Supp. 1439, 1452 (W.D. Mich. 1989)).

## *2.     Declaratory Judgment*

In the Answer, Defendant raises a counterclaim for a declaratory judgment. Defendant seeks a declaratory judgment finding that Plaintiff failed to appear for the oral examination under oath and produce documents, violating the Policy, and is therefore barred from recovery. Plaintiff asks that the Court grant summary judgment in her favor on this claim. As the Court detailed above, the Court believes that a genuine issue of material fact exists concerning whether Plaintiff

complied with the cooperation clause of the Policy, and as a result, summary judgment is not appropriate. This issue presents a question for the jury.

3.  *Attorney's Fees*

In their counterclaim for a declaratory judgment, Defendant asks for an award of attorney's fees. Specifically, Defendant requests that "[u]pon a finding of misrepresentation, concealment or fraud, by Plaintiff, that Defendant be allowed to present to the Court the total amount of attorneys' fees and expenses that defendant is entitled to recover." Plaintiff asserts that Missouri follows the American Rule, which generally states that parties bear their own attorney's fees, and as a result, Plaintiff asks for summary judgment on Defendant's request for attorney's fees.

While Plaintiff is correct that Missouri follows the American Rule, Missouri courts find that attorney's fees may be awarded under "special circumstances." *Washington Univ. v. Royal Crown Bottling Co.*, 801 S.W.2d 458, 468 (Mo Ct. App. 1990). Defendant specifically seeks fees "[u]pon a finding of misrepresentation, concealment or fraud, by Plaintiff," which is in accordance with the "special circumstances" exception under Missouri law. *In re Usery*, 123 F.3d 1089, 1096 (8th Cir. 1997). Summary judgment will not be granted on Defendant's request for attorney's fees.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Farmers Alliance Mutual Insurance Company's Motion to Dismiss Count III of Plaintiff's Complaint [doc. #32] is **GRANTED.** Count III of Plaintiff's Complaint, for fraudulent misrepresentation, is **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Defendant Farmers Alliance Mutual Insurance Company's Motion for Summary Judgment [doc. #41] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment [doc. #44] is **GRANTED, in part,** and **DENIED, in part.** Affirmative Defense (G) is stricken from Defendant's Answer, and, this Motion is **DENIED** in all other respects.

So Ordered this 4th Day of May, 2009.

*E. Richard Webber*
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE